## Blank *against* German.

| 5 w s 36 |
| 192  619 |

5 WS   36
f218   69

One who purchases expressly subject to an encumbrance, makes the debt due on the encumbrance his own debt as between him and the vendor.

But that is not the case where there is no promise to pay the encumbrance, nor anything in the nature and circumstances of the transaction to imply it; but merely a transfer of encumbered property to creditors in consideration of their agreeing to release their debts.

Therefore, where the plaintiff, being indebted to several persons, proposed to convey to them his house and lot subject to a mortgage to a third person not party to the arrangement, in consideration of receiving from them a release of their debts, and the defendants agreed at the foot of a consolidated statement of his liabilities, to release their claims and take a conveyance to two of them "for the use of the above debt," and he conveyed accordingly, *held* to be not a sale, but an ordinary assignment to trustees for the use of creditors, the plaintiff having still a resulting interest in the surplus; and that the defendants were not liable to refund to him the amount he had been obliged to pay on account of the encumbrance.

ERROR to the Common Pleas of *Lehigh* county, in which an action of *assumpsit* was brought by Benjamin German against John Blank, John Knepply, John Rice, Michael Bastian and Peter Knepply, who survived Peter Cooper, impleaded with Christopher Shulze, to recover the deficiency in the sale of certain mortgaged premises, which the plaintiff alleged the defendants had agreed to indemnify him against. The circumstances of the case were as follows:

The plaintiff was the owner of a house and lot of ground in

[Blank v. German.]

Womelsdorf, Berks county, which he mortgaged on the 28th of April 1831, to "The Society of the United Brethren for propagating the gospel among the heathen," to secure a bond to them of the same date, for the payment of $1500 on the 27th of May 1832. The interest was regularly paid, and on the 22d of February 1837 the whole amount of principal remained due and unpaid. On that day the following paper was executed:

Benjamin German agrees to convey the house and lot of ground owned by him in Berks county, subject to the payment of a mortgage due to the Brethren of the Bethlehem Congregation, and also subject to a full release of the following debt to Peter Knepply, Michael Bastian, John Rice, Peter Cooper, John or George Blank, Knepply, Christopher Shulze. Witness my hand, 22d day of February 1837.                                     BENJ. GERMAN.

| | | |
|---|---|---|
| John Blank's | demand, ............ | $ 439.00 due April 1st 1837. |
| Peter Cooper's | " ............ | 374.50 |
| John Rice's | " ............ | 501.50 |
| Christopher Shulze's | " ............ | 111.25 |
| Michael Bastian's | " ............ | 164.12 |
| Knepply & Company's | " ............ | 109.50 |
| Bethlehem | " ............ | 1500.00 |
| | | $3199.87 |

We the undersigned do hereby agree, if the above-named German will assign the above-mentioned premises to John Blank and John Rice for the use of the above debt, and the delivery of the said premises, that we will release all and each of our claims unto the said Benjamin German; and we further do hereby agree that all and every act that the said appointed John Rice and John Blank shall and may do, shall be confirmed by us.

*February* 22d 1837.                                PETER COOPER,
                                                    CHRISTOPHER SHULZE,
                                                    JOHN BLANK,
                                                    MICHAEL BASTIAN,
                                                    JOHN KNEPPLY,
                                                    JOHN RICE.

On the 1st of April 1837, Benjamin German and wife conveyed the house and lot to John Rice and John Blank for the consideration of $3200, by deed acknowledged in July and recorded in August. On the 8th of August 1837, Rice and Blank executed a deed reciting the above agreement and deed, and declaring "that the names of us the said John Rice and John Blank in the said recited indenture, are used only in trust for the above-named John Blank, Peter Cooper, Jacob Rice, Christopher Shulze, Michael Bastian, and Knepply & Co. respectively, their respective heirs, executors, administrators and assigns, in such rates and proportions as their respective claims or debts above stated bear to the nett proceeds of the said messuage and lot of ground, after a sale.

to be made thereof by the said J. Rice and J. Blank, (subject to the aforesaid mortgage); and the said John Rice and John Blank, for themselves severally and respectively, and for their several and respective executors and administrators, declare and agree that they shall and will, after a sale of the premises aforesaid, and the proceeds of sale having come into their hands, well and truly account for and pay over unto the said John Blank, Peter Cooper, Jacob Rice, Christopher Shulze, Michael Bastian, and Knepply & Co., their heirs, executors, administrators or assigns respectively, their *pro rata* dividends or rates and proportions of the nett proceeds of the sale of the premises aforesaid, according to the true intent and meaning hereof, and of the agreement above-mentioned: Provided, that the surplus, if any, remaining after paying the debts and demands aforesaid, be refunded to the said Benjamin German, his executors, administrators or assigns. In witness whereof, &c., dated, &c."

In August 1839, the mortgagees issued an *alias scire facias* on their mortgage in the Common Pleas of Berks county, and obtained judgment in September; and the premises were sold under a *levari facias* to John Rice for $560. In November 1839 the Society entered up judgment on their bond and warrant against German, and issued execution and sold his personal property to the amount of $188.30½. Some parol evidence was given as to the receipt of the rents of the property in 1837 and 1838.

The Court charged the jury as follows:

The plaintiff insists that the defendants by their agreement were bound to pay this mortgage debt, as part of the consideration for the lands; and because they did not pay it, this suit is brought. The defendants deny all obligation to pay this $1500, and in this the present controversy consists. Our first duty is to determine what the contract of the parties is. In doing this, their intention is to be ascertained from the terms they have used in the writing. The sense in which the parties mutually understood their agreement at the time it was made, should be the one adopted, as far as the rules of law will permit. The plain, ordinary and common-sense meaning of the terms employed in the writing is to prevail. No set form of words is necessary to create a contract. The words used must create an obligation: they should not be dubious or equivocal. When all the parts of the agreement are brought forward and considered, it must appear that the one intended to have an obligation for his benefit, and that the other intended to give it. Whatever results in this will be sufficient to create a contract; and when the case falls short of this, there is no obligation.

By the writing, the plaintiff proposes to sell *subject to this debt*. This debt with others is definitely set forth; all the debts thus stated are thrown into the gross sum of $3199.87. The plaintiff stipulated for the sale of the premises as subject to this sum of

money due on the mortgage. The other debts he required should be released. This gross sum composed by the union of all the debts, formed the consideration for which he was willing to grant the land in fee. The defendants agreed to accept an assignment of the property for the use of the above debt; and on its being so assigned, promised a release of their debts. How was it to be taken for the use of the above debt? What debt was it then to be taken and held for? The above debt can be no other than the $3199.87. It is the debt set forth, and to be found above in the written agreement.

This writing is to be all taken together, and as one paper. It is the agreement of the parties; and the place in which the names of the parties is found does not make it less so. It is an agreement for the purchase and sale of the property; and this $3199.87 is the consideration to be paid. The debts due the vendees were to be released; they were to hold the land subject to the other. This was then a lien. They held it for the use of this debt; that is, as I understand it, one of the uses and purposes for which they held the land was the payment of this debt. This construction is strengthened by the fact that the entire debt is the consideration mentioned in the deed. This sum is given as the money which was to be paid. It is receipted for as so much money actually paid. In the deed it is found as a part of the consideration to be paid for the land. If it was part consideration and was not then paid, as it is not pretended it was, when the deed was delivered, the receipt can only be accounted for on the supposition that the land was to be held subject to it, and the plaintiff was to be released from its judgment. Taking the agreement of the parties and the deed, the case appears to fall within the principle settled in *Campbell* v. *Shrum*, (3 *Watts* 60). In the deed of trust the excess, if any, on a sale of the property beyond the debts is reserved for the use of German. It is argued this shows the transaction was not one of purchase and sale, but an assignment for the payment of debts only; to this paper the plaintiff is no party; he may not have known of it; nothing of the kind appears in the agreement or deed. But in the deed of trust it is more than once stated that the defendants took and held subject to this mortgage debt. Thus it appears in all the papers, that the defendants took subject to this debt. It is nowhere intimated that the plaintiff is to be ultimately responsible to the defendants for the payment of this debt, if the property did not sell for an amount sufficient to pay it, nor that they are not liable for it or that part of it which the property may not discharge. If the parties had not deemed it adequate for the payment of this debt, it is to be presumed they would have provided for the contingency. That they did not so provide, proves that they were satisfied that it was sufficient, and that the transaction was concluded on that basis.

These debts appear to have been the price fixed upon by the

[Blank v. German.]

plaintiff as the value of his lands, and to have formed the consideration for which the grant was made and the fee received. The case cannot be distinguished from that of *Campbell* v. *Shrum*, on the authority of which we say the defendants were bound to pay the mortgage debt. It is said that case was one of the sale of an equitable title, and therefore not applicable to this case. It was the sale of an equitable title, but the case was not one of equity or of title; it was one of covenant; the question was one of obligation only; the matter was contract arising from the agreement to hold subject to a particular claim. There, as here, there was no agreement to pay the debt other than that which arose from the agreement to take subject to it. That was covenant on the sealed instrument; this is case on an instrument without seal. If the same words and conditions will support covenant when there is a seal, they certainly will support case when there is no seal. I am unable to distinguish the cases.

Peter Knepply is a party to this suit; his name is not to the paper. The defendants now ask us to charge you that there is no evidence that Peter Knepply was a party to this contract, and that your verdict must be for them. In cases of contract a liability must be proved against all who are made parties. This rule is undeniable; but it must be remarked that the jury have not only the right to find and decide the facts, but also to draw conclusions by way of inference fairly deducible from the facts proved. This latter power is as clearly theirs as the power to determine any other matter of fact at issue in a cause. If there was nothing in the evidence at all applicable to Peter Knepply, either directly or by fair inference, I would feel bound to comply with the defendants' request. But in the body of the agreement we have the name of Peter Knepply; in the list of debts we have Knepply & Co.; the name of John Knepply is signed to it; in the deeds we have Knepply & Co. The plaintiff contends that Peter and John formed the company, and that Peter assented to an arrangement made for the benefit of his partner and himself. These circumstances are proper for your consideration. I do not feel at liberty to withdraw them from your consideration, nor to decide them for you. They may not be entitled to much weight, if any. They may not go far to satisfy you that Peter was a party to this agreement. Of this, however, you must judge for yourselves. Unless you are satisfied that Peter was a party to this agreement, your verdict must be for the defendants. The plaintiff claims through a joint liability, and before he can recover in this suit, he must have proved a liability upon each one sued."

The defendants excepted to the charge. The jury found for the plaintiff the sum of $1309.77 damages with 6 cents costs; and that the judgment be released upon the payment to Benjamin German of the sum of $207.94, and to the United Brethren for propagating

[Blank v. German.]

the Gospel among the heathen, the sum of $1101.83, together with costs and stay of execution for six months. ·

Errors assigned :

1. The court erred in stating to the jury that " the plaintiff proposed *to sell* subject to this debt," (he proposed to convey) ; and, " after German's deed to Rice & Blank, he delivered possession of the premises to them, and they leased the property and received some rents for the same."

2. In charging the jury that the agreement of the 22d of February 1837, was an agreement for the purchase and sale of the property, and $3199.87 was the consideration to be paid ; and that, taking the agreement of the parties and the deed, the case appeared to fall within the principle settled in *Campbell* v. *Shrum ;* and that on the authority of that case the defendants were bound to pay the mortgage debt.

3. In charging the jury that the defendants not having provided in the agreement that the plaintiff should pay the mortgage in case the land was not sufficient, proved that they were satisfied that the property was sufficient, and that the transaction was concluded on that basis ; that the debts appear to have been the price fixed upon by the plaintiff as the value of his land ; and to have formed the consideration for which the grant was made and fee received ; and the receipt in the deed can only be accounted for on the supposition that the land was to be held subject to it, and the plaintiff was to be released from its judgment.

4. In charging the jury that nothing like an assignment for payment of debts only appeared in the agreement or deed, and that German was. no party to the deed of trust, and may not have known of it.

5. The Court should either have left it to the jury to find under all the evidence in the cause whether the deed of trust was or was not a step towards carrying into effect the original agreement, and as a part of the same transaction, binding on all the parties to the agreement and known to them all ; or they should have charged the jury as matter of law that the deed of trust was but the execution of the agreement between the parties, and that the agreement and dates of execution and acknowledgment and record of deed and deed of trust showed it to be one transaction, and that an assignment in trust merely for the payment of the debts of the plaintiff with a resulting trust in his favour.

6. In not charging the jury that the plaintiff had not proved his case, and therefore was not entitled to their verdict.

7. In refusing to charge the jury that there was no evidence that Peter Knepply was a party to.the contract as proved ; and in leaving it to the jury to say, 1, whether Peter Knepply was one of the firm of Knepply & Co., of which there was no evidence at all ; 2, if he was one of the firm, whether he assented to the agreement signed by John Knepply, of which there was equally

v. — 6　　　　　　　D *

[Blank v. German.]

no evidence; and lastly, whether he was a party to the agreement.

C. *Davis* and *King*, for plaintiffs in error.
*Gibons* and *Porter*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—Had the defendants below *purchased* the property subject to the mortgage debt, the case would have been within the principle of *Campbell* v. *Shrum*, because the price would have been estimated at the clear value less the mortgage debt, and it may be said that so much of the price would have been virtually retained to answer it; so that the plaintiff would have lost that much, had he been compelled to pay with other funds than those set apart for the purpose in the defendants' hands. As it would have been a fraud in them to retain his money and let him be pursued for it on his bond, they would have been held liable on an implied promise to apply it to the purpose intended; and it may be said in every such case, that he who purchases expressly subject to an encumbrance, as between the vendor and himself, makes the debt his own—which is the principle of *Campbell* v. *Shrum*. But what deduction or reservation of purchase-money was there in the contemplation of the parties before us? There was no express promise to pay a farthing either to the plaintiff or the mortgagees; nor is there anything in the nature or circumstances of the transaction from which a promise can be implied, further than as regards an application of the fund to the debts. It does not appear that the object of the defendants was profit on a resale, or to take the property as their own, or that there was any sale to them at all. The plaintiff proposed to convey to them his house and lot subject to a mortgage to the Society of United Brethren, who were not party to the arrangement, in consideration of receiving a release of their debts. He could not have conveyed an unencumbered title; and perhaps no more was intended to be expressed than that he did not undertake to do so. The defendants agreed at the foot of a consolidated statement of his liabilities, to release their claims and take a conveyance to two of their number as trustees, "for the use of the above debt;" and he conveyed accordingly. Was that a sale, or was it an ordinary assignment to trustees for distribution among creditors? There is not a word in the agreement about purchase-money, or a reservation of anything; nor is there an engagement to pay to any one but themselves and the mortgagees, nor to the latter beyond the proceeds of the property: neither is there a guaranty that the proceeds will be sufficient to discharge the mortgage debt. Had there been a surplus after payment of all the debts, the plaintiff would have been entitled to it; and why should he be allowed to call on the defendants to make up any deficiency? The price obtained for

[Blank v. German.]

the property was applied by the trustees to the mortgage, but did not discharge it; and the plaintiff calls for indemnification from his creditors for the residue of it recovered from him on the bond which accompanied the mortgage, though they released him without having received a farthing from the fund. Such a claim is palpably unjust, and would require very positive expressions to give it effect. The agreement, however, imports distinctly that the property was to be conveyed to trustees for payment of debts, and not merely to be sold for the defendants' advantage beyond satisfaction of their demands. What else can be drawn from the clumsy expression, " for the *use* of the above debt ?" The defendants cannot be said to have been purchasers even in a technical sense; for the property was conveyed only to two of them, who executed a declaration of trust that they were to apply it to the plaintiff's debts, and return the surplus to him, should there be any. If, as seems to have been supposed below, the debts were the measure of the price fixed upon the property by the parties as the value of it, and constituted the consideration of the grant, it is difficult to account for the insertion of this clause for a return of surplus. If the defendants bought the property and paid for it with the debts, they, and not the plaintiff, would be entitled to the profits on a resale; yet the plaintiff undoubtedly retained a contingent interest in the property beyond its application to the mortgage, and one which is inconsistent with the notion that he sold it. The defendants, therefore, were not purchasers. Peter Knepply, who is sued as one of them, did not even sign the agreement; and they who did, were to get no more for it than the desperate chance of receiving something from an insolvent fund. For that consideration, they gave up their recourse to the plaintiff's person and future earnings; and it would be a violation of the letter as well as the spirit of the agreement, to subject them to the loss of anything else.

Judgment reversed and a *venire de novo* awarded.