From Mrs. Daryle R. Heckman, Somerset, Pa.

## Sullivan, Guardian, v. J. B. Fluke & Co., Inc., et al.

*Robert A. Henderson*, for claimant; *Harry J. Nesbit*, for defendant.

PATTERSON, P. J., July 14, 1930.—This is an appeal by the Utica Mutual Insurance Company from the decision of the Workmen's Compensation Board dismissing a petition for termination of a compensation agreement.

Edward Barr, employed by J. B. Fluke & Co., Inc., was injured in the course of his employment 'Sept. 16, 1925, and died as a result thereof Oct. 3, 1925, leaving as dependents his widow, Eva Gertrude Barr, and Walter John Barr, five years of age and son of a former wife from whom he had been divorced. The Utica Mutual Insurance Company was the insurance carrier of the employer. The minor son is supported and maintained in the home of his maternal grandfather, W. C. Walker. A compensation agreement was entered into by the insurance carrier with the widow personally for payment of 299 weeks at $8 per week, or $2392, and with the minor son, through his grandfather, W. C. Walker, for payment at $2 per week from Oct. 5, 1925, to June 27, 1931, $595, and at $3 per week from June 28, 1931, to Aug. 8, 1935, $644.14, or a total sum to the minor son of $1242.14. This agreement, numbered 1872659, was approved by the board Dec. 11, 1925. Edward Barr lived one week after the injury and received compensation for that time. Payments under said agreement were made to the widow in the sum of $206, and payments for medical, hospital and burial expenses in the sum of $426, a total of $632. Payments were made to W. C. Walker for the minor child continuously to July 12, 1929, a total of $394.

The widow entered suit against the Pennsylvania Railroad Company, the third person liable for the death of Edward Barr, and settled the same for $5000, out of which she paid attorneys' fees of $1468 and refunded to the insurance carrier $632 for compensation and other items paid by her, leaving in her hands the net sum of $2900. In order to induce the widow to proceed with her settlement with the Pennsylvania Railroad Company and allow her the net sum of $2900, the insurance carrier, appellant, agreed with her that her part of the agreement be terminated, and that instead of charging any part of said settlement to payments made and to future instalments to become payable to the minor child, payments were to be continued to him under the existing agreement until he should become sixteen years of age. A guardian, J. Austin Sullivan, Esq., was appointed by the Orphans' Court of Blair County, who filed a bill in equity against the widow on Aug. 16, 1926, to recover from her the minor's share of said $2900, and this action resulted in a settlement approved by the court Dec. 21, 1926, in which the widow paid to the guardian $1000. The decree of court in the settlement of the equity suit of the guardian against the widow provided that the payment to the guardian of said $1000 "shall not affect the right of said Walter John Barr receiving the compensation as was awarded him by the Workmen's Compensation Board." The appellant carrier was not made a party to said equity suit, neither was it given notice of the same, and when it learned of the said equity suit and the payment of $1000 by the widow to the guardian, it filed its petition with the compensation referee to terminate the agreement and to credit said $1000, less $200 attorneys' fees, or $800, as an advance payment on account of future instalments of compensation. Answer was filed for the guardian of the minor and hearing had before Jacob Snyder, Esq., referee, who made an order dismissing the petition for want of jurisdiction. This order was later affirmed and appeal dismissed by the Workmen's Compensation Board, whereupon the present appeal was taken to this court.

The question involved, as stated by appellant, is as follows: Should the net fund collected by the guardian of the minor as his share, out of the settlement for the death of the deceased employee, made with the third party responsible for the death, be credited as advanced payment of compensation?

Section 319 of the Workmen's Compensation Act of 1915 provides as follows:

"Where a third person is liable to the employee or his dependents for the injury or death, the employer shall be subrogated to the right of the employee or the dependents against such third person, but only to the extent of the compensation payable under this article by the employer. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employee or to the dependents and shall be treated as an advance payment by the employer on account of any future instalments of compensation."

It is under this section that counsel for appellant contends that the employer (in this case the insurance carrier) has the right to demand subrogation on account of the compensation due the minor under the original agreement to the extent of $800, this being the amount his guardian has received from the $2900 paid by the third party, the wrongdoer. And with this contention we would be bound to agree if it were not for the fact that the evidence shows that the $2900 paid by the wrongdoer to the widow was for her exclusive personal use, and that while the suit against the Pennsylvania Railroad Company (as a result of which said sum was recovered) was originally instituted for the widow and the son, the settlement was made for the widow alone and with the clearly expressed understanding that said settlement was not in any wise to affect the payment to the minor son as provided for in the compensation agreement.

Mr. Max W. Dickey, who was assistant secretary of the Utica Mutual Insurance Company, appellant, and claims manager for the State of Pennsylvania, and who had personal supervision of the present case and personally represented appellant at the time Eva Gertrude Barr made settlement of her suit against the Pennsylvania Railroad Company, testified (page 29) as follows: "Q. Well, Mr. Dickey, when you made the agreement with Eva Gertrude Barr, whereby she released her compensation, except $206, and was allowed to receive the $2900 from the railroad company in settlement of the trespass case she had brought, you didn't make any contention to her that your insurance company had any control over the money she received from the railroad company in settlement of that case? A. No; we had no control over that; that was her money." And, again, on page 30, Mr. Dickey further testified: "A. We attempted negotiations to have the settlement protect our subrogation for both Mrs. Barr and the minor child." Question by Mr. Nesbit: "Q. And then you made the concession of continuing the payments of the child to the guardian, the grandfather, for the purpose of allowing Mrs. Barr to get the $2900? A. That is correct." And later, on the same page, question by Mr. Henderson: "Q. But, as you have testified, you had no control over the amount of money which Mrs. Barr received—that is, she could use it as she saw fit? A. If you mean after negotiations were all through, any sums of money that she received then were hers. We had no control after that point." And on page 28, testimony of Mr. Dickey: "Q. Well, now, when you came to make the agreement, when Eva Gertrude Barr settled with the Pennsylvania Railroad Company, you left in full force and effect that portion of the agreement between the insurance carrier and Mr. Walker, the grandfather of Walter John Barr, the original payment of compensation as contained in that agreement? A. Yes; have been continuing in this one agreement; no other agreement was ever entered into. Q. And it was understood that he should be paid these payments in full? A. Under certain circumstances. Q. Well, the circumstances you have already related — that Mrs. Eva Barr or Gertrude Eva Barr, should receive $2900? A. I believe you misunderstand what I am trying to get at. We continued payments to

the minor child with the idea in mind that this $2900 that Mrs. Barr would receive would be hers entirely; that she wouldn't have to split that up in order to protect this minor child, and that is the reason we made the agreement."

It is agreed by all parties interested that the $2900 received by the widow in settlement of her suit against the Pennsylvania Railroad Company belonged to her personally and exclusively. In our opinion, she could have given all of it to the minor child or kept it all, so far as the appellant was concerned. Under the intestate laws the son had some right to share in the sum so recovered, and in the absence of the agreement testified to by Mr. Dickey, the appellant would have had the statutory right of subrogation in the sum of $800, being the net amount recovered by the minor son. The guardian agreed to settle for less than the amount the minor was entitled to receive because of the agreement between the widow and the insurance carrier that compensation payment would continue on behalf of the minor. And since this expressed agreement was fully understood by all parties at the time the settlement was made and it was the inducement which caused the widow to accept settlement, it is now too late for the carrier to ask the courts to disregard its own voluntary participation in such an understanding and to permit it the right of subrogation as provided by law as though no agreement and understanding had been entered into.

21 Corpus Juris, 1110, 1111, § 110, defines estoppel as follows: "There are two sorts of what has been termed 'estoppel by contract,' namely, (1) estoppel to deny the truth of facts agreed upon and settled by force of entering into the contract, and (2) estoppel arising from acts done under or in performance of the contract."

"If, in making a contract, the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud, accident or mistake. There can, of course, be no estoppel as to matters not included in the contract:" 21 Corpus Juris, § 111, page 1110 (citing Old Colony Trust Co. v. Allentown R. T. Co., 192 Pa. 596).

To permit the appellant to repudiate its voluntary agreement in order to procure a settlement with the widow would be fraud as to the minor. We have carefully examined the cases cited in appellant's brief and find that they do not support appellant's right to subrogation. Mayhugh v. Somerset Telephone Co., 265 Pa. 496, construes section 319 of the Workmen's Compensation Act as giving the right of subrogation where there is no agreement, as in present case. In the case of Tallett et al. v. Scranton Ry. Co., 10 Dept. Reps. 751, the money paid was from disinterested parties and not from the wrongdoer, and, therefore, there was no right of subrogation. The cases of Wilson v. Pittsburgh B. & I. Works, 85 Pa. Superior Ct. 537, and Smith v. Yellow Cab Co., 87 Pa. Superior Ct. 143, and the same case in 288 Pa. 85, are cases in which both the Superior and Supreme Courts construe the laws as to the right of subrogation where there is no agreement, as in the present case. Riley v. Alexander-Johns Co., 14 Dept. Reps. 84, and Zimmer v. Casey, 296 Pa. 529, are also cases relating to the right of subrogation where there is no agreement, as we have in the present case.

### Decree.

The findings of fact and order of the referee as affirmed by the Compensation Board are hereby approved and sustained and the appeal is dismissed.

From Robert W. Smith, Hollidaysburg, Pa.