20    60
201   649

## Thayer *versus* Society of United Brethren.

1. Where a lessee at the time of the execution of the lease is not the occupant of the land leased, and he takes possession under and in pursuance of the lease, he cannot claim title to the land without first surrendering the possession.

2. But if the lessee were in possession at the time the lease was executed, he may resist a recovery by proving that he accepted the lease in mistake, or was induced by fraud or misrepresentation to accept it.

3. Without some proof of fraud or mistake, a lease executed when the lessee was in possession of the land is valid, and must be followed by all the incidents of a lease under which the lessee goes into possession.'

4. The mere fact that the tenant has a better title than the landlord, does not of itself raise the presumption that the lease was a fraud, or was accepted through mistake.

5. Whatever is not found in a special verdict is to be considered as not existing.

ERROR to the Common Pleas of *Erie county.*

This was an action of ejectment by the Society of United Brethren, for propagating the Gospel among the heathen, *v.* Luke Thayer, for about twenty acres of land. The plaintiff, in the description and writ, claimed the land as being 320 perches long from north to south, 10 perches wide from east to west, and as "part of a larger tract of land patented by the Commonwealth to the plaintiff, on the 14th day of April, 1795." On the trial, plaintiffs did not exhibit their patent, but gave in evidence two leases, each for 80 acres, from plaintiffs, by their agent, William Miles, to defendant. The first lease was for a term of seven years, and dated April 26, 1824; the second, for 14 years, and was dated Feb. 15, 1833. The land was described in the two leases as having generally the same boundaries. But in the first lease, the property leased was described as a tract of land beginning at a post on the state line, thence south, &c., thence north one mile, *passing through the improvements of said Thayer*, &c., containing eighty acres of land.

In the second lease, the premises leased were described as bounded south "by said Thayer's land."

It was stated, that, at and before the making of the first lease, the *defendant* claimed and had possession of a tract of land east of, and adjoining the land of plaintiffs, and as a part of it, possession of the strip in controversy. The defendant admitted that the boundary of the first lease, by passing through his then improvement, would include the land in controversy; but that the second, bounded by his land, excluded it, and insisted that it was part of his own land at and before the making of the lease, and had been so ever since. That he had been induced to sign the first lease through the representations of plaintiff's agent that such lease would not prevent his (defendant's) holding the land now in controversy, as his own, if within his lines; and he also insisted that the second lease, the eastern boundary of which called for defendant's

own line, abrogated and annulled the first lease, so that the plaintiffs could not recover under it land that did not belong to them, but to the defendant. The defendant proved, that when plaintiff's agent was running a north and south line between the plaintiff and defendant, and run through defendant's field, defendant objected; and that the agent of plaintiffs assured the defendant that it was of no consequence where he put the line, that plaintiffs could only hold to their true original line, wherever it might be.

Defendant then offered in evidence a patent from the Commonwealth to him, dated Oct. 2d, 1820, to be accompanied with proof that it included the land in controversy, and to show the position of plaintiff's east line as originally marked on the ground (it being the defendant's west line), and that it excluded the land in controversy. To this plaintiff's counsel objected, on the ground that the lease was conclusive, and thereupon a special verdict was agreed to, and was found as follows:

The jury find, "That on the 26th day of April, 1824, the defendant took a lease from plaintiff on that date (pro ut same), and which is made a part of this verdict and finding, as fully as if particularly set forth herein, and on the 15th of February, 1833, the defendant took another lease from plaintiff (pro ut same), and which is also made a part of this finding, as if particularly set forth herein; that, at the time of taking the first lease, the defendant had enclosed of this land in dispute the field mentioned in the first lease, amounting to 5¾ acres, and continued in possession to this time, as at the time of the leases. If the Court should be of opinion that, under the said leases and the fact of said possession at the time of taking them, defendant is entitled in law to set up adverse or outstanding title, or independent title in himself, then they find for defendant; otherwise for plaintiff."

The Court rendered judgment for the plaintiff.

To this error was assigned.

*Walker* and *Babbit*, for plaintiff in error.—The second lease was evidence that the first one was satisfied, and it abrogated the former one: 2 *Pa. Rep.* 533. In the second lease the land in controversy was excluded.

The finding was that the defendant was in possession at the time of his receiving the first lease. The rule prohibiting a tenant from controverting the title of his landlord applies to cases where the lessee has received possession from the lessor; or where, being in possession, and being without title, he accepts a lease; but should not be applied to a case where a person, being possessor and owner of the premises, is induced, under misapprehension of his right, or from misrepresentation on the part of the lessor, to accept a lease. If the defendant were in the possession when he took the

F

[Thayer *v.* Society of United Brethren.]

lease, and was then the real owner of the land, it was not necessary for him to surrender the possession: 1 *Pa. Rep.* 410, Ross, J., in Hall *v.* Benner; 6 *Watts* 45, Huston, J.; 2 *W. & Ser.* 249.

*Taylor,* for defendants in error.—The Court below, in entering judgment on a special verdict, is to be confined to the facts found by it: 3 *Yeates* 373.

There should have been a surrender of the possession. A tenant cannot controvert his landlord's title, except where he has been induced to accept a lease through *fraud* on the part of the lessor; 5 *Watts* 55, Boyer *v.* Smith. The special verdict does not find either fraud or misrepresentation, and they should not be presumed.

*Reply.*—If the Court is to be confined to the facts found in the special verdict, the judgment must be reversed, as the verdict does not find that either of the leases covers the twenty acres in controversy.

The opinion of the Court was delivered by
. Black, C. J.—We conjecture that the plaintiff below is, or claims to be, the landlord of the defendant, and that the contest is induced by an effort of the latter to set up title in himself.

Where a lessee, at the time the lease is executed, is not the occupant of the land leased, and he goes into possession under and in pursuance of the lease, he cannot afterwards claim title to the land without first surrendering possession to the lessor. Justice requires that the parties should assume their original position before any dispute about the title can be tolerated.

But if the lessee was in possession at the time the lease was executed, he may, under certain circumstances, be permitted to. prove that the land is his own, and thus resist the proceedings to turn him out. This is allowed because the landlord, if he fails, is not in a worse condition than he was before the lease.

In order, however, to give the tenant this right, it is necessary for him to prove that he accepted the lease in mistake, or that he was induced to accept of it by some fraud or misrepresentation. He will be able to avoid the lease by proof of such facts as would entitle him to relief in equity from any other obligation created by deed.

A lease given in good faith by one party and accepted by another with his eyes open, is valid and binding on both, though the actual occupancy be not changed. It creates the relation of landlord and tenant. It is a solemn admission of the lessor's title. It disarms him of the power to take possession during the term, and therefore ought to be conclusive of his right to do so afterwards. The mere fact that the tenant has a better title than his landlord does not of itself

[Thayer *v.* Society of United Brethren.]

raise the presumption that the lease was a fraud or accepted by mistake. The lease is not rendered void by proving title in the lessee. To make the law otherwise, would be to say that the tenant shall not set up title in himself when he has none, and that the lease shall be no evidence of the landlord's rights except when he can prove them without it.

We have thus given our opinion in the abstract upon the question argued. But it is impossible to give a final judgment on the case before us. The jury found a special verdict, but it omits almost every important fact. The defendant, it seems, accepted a lease from the plaintiff in 1824, and another in 1833. At the date of the first one he "had enclosed of this land in dispute the field mentioned in the first lease, amounting to five and three-quarter acres, and continued in possession to this time as at the time of the leases." This is absolutely all that the verdict finds. Whether the two leases were for the same land; whether either of them embraced the whole of the land in dispute; whether the defendant was in possession only of the five and three-quarter acres, or of all that is claimed in this suit; whether any fraud was committed by the plaintiff, or any mistake by the defendant; all these questions of fact have been left open, and some of them have been argued here as if we were expected to determine them. What is worse, the verdict does not say whether the defendant has any title, and it leaves the plaintiff in the same condition; for though it says that a field mentioned in the first lease is a part of the land in dispute, when we turn to the lease we find no word about any field there. Whatever is not found in a special verdict must be taken not to exist. It is useless to talk of what was proved. We can do nothing but send the cause back for a new trial.

Judgment reversed and *venire facias de novo* awarded.