## Titus et al., Appellants, *v.* Mapel-Sterling Coal Company et al.

Argued March 27, 1933. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*William J. Kyle,* of *Kyle & Reinhart,* with him *Walter
C. Montgomery* and *David M. McCloskey,* for appellants.

*Challen W. Waychoff* and *James J. Purman,* with them *A. A. Purman,* for appellees.

OPINION BY MR. JUSTICE LINN, April 24, 1933:

We all agree that the preliminary injunction, granted pursuant to Equity Rule 38 on bill and affidavits, should have been continued on the evidence taken at the subsequent hearing, and that the order dissolving it was wrong. In our review, in accord with the established rule, we inquire only whether, on the facts developed at this stage of the proceeding, the injunction should have been continued, necessarily withholding any expression of opinion on the merits until after final hearing and decree: Casinghead Gas Co. v. Osborn, 269 Pa. 395, 112 A. 469.

The plaintiffs are owners of coal in certain tracts described in the bill, apparently mined by one or both of the defendants in circumstances in which neither appears to have the right to mine, without payment of royalty due to plaintiffs, and, also, in a manner alleged to be wasteful, improvident, and, if not stopped, permanently harmful.

Without reciting the chain of title, or the provisions of the instruments under which mining was done by various mine lessees from 1921 to June 21, 1932, we note that on that day plaintiffs gave notice to defendants that, pursuant to its terms, the parties (or their successors) to the original mine lease of July 31, 1920, had cancelled that instrument for admitted default in payment of royalty, and, in addition, that defendants should "desist from any further mining operation in the said coal and to give up quiet and peaceful possession . . . . . ." to plaintiffs.

There is evidence that, on receipt of such notice, defendants ceased mining. As they had entered subject to the terms of the original mine lease by plaintiffs' predecessors to Moffitt-Sterling Gas Coal Company, they were necessarily bound by its terms. Two days later, June

23, 1932, plaintiffs sold to one of the defendants, Mapel-Sterling Coal Company, "5,000 tons of coal in place in the Pittsburgh seam of coal......[part of the coal described in the original mine lease]......and the 5,000 tons hereby sold are to be mined and removed from that portion which was formerly assigned to the Mapel-Sterling Coal Company and are to be mined and removed in accordance with the best methods of mining and removing coal so as to protect said mine. The said five thousand tons of coal hereby sold are to be mined and removed within the next thirty days, and when said five thousand tons of coal are removed the said Mapel-Sterling Coal Company shall cease operations in said mine, and that this agreement for the sale of said five thousand tons is not in any way to affect the notice heretofore given to terminate said leasehold estate further than the right to remove the said five thousand tons of said coal."

The president of the other defendant, Sterling Fuel Company, testified that his company had stopped mining (pursuant to the notice referred to above as we understand the case) at the request of the manager of Mapel-Sterling Coal Company, defendant, and that, after June 23d, "under the direction of Mr. Mapel" (for the Mapel-Sterling Coal Company) his company resumed mining.

It is concerning the effect of this conduct, as it now appears in the record, that we differ from the learned chancellor who heard the case below. He was of opinion that six months' notice of cancellation was necessary pursuant to the original mine lease and that plaintiffs' bill was premature. We do not think so. The parties are in equity. They were competent to agree, and if the defendants, expressly or by implication, waived applicable conditions of the original mine lease, to the terms of which they were subject, and, in compliance with the notice, ceased mining on or about June 21, 1932, they must abide the consequences of their conduct, and no

reason yet appears in the record why they should not do so.

Having placed themselves in that position, let us consider what they did then. On June 23, 1932, as has been said, plaintiffs sold to one of defendants 5,000 tons of coal in place, to be mined as provided in the agreement, part of which has been quoted above. There is evidence that defendants not only mined the 5,000 tons but some 40,000 tons additional for which they have not paid; that they have not mined "in accordance with the best methods of mining and removing coal so as best to protect and preserve said mine." Certainly if those assertions are true—and for present purposes we must accept them—plaintiffs have made out a case requiring immediate equitable intervention until final hearing.

The evidence supports the conclusion that defendants are estopped from claiming the benefit of the provision requiring six months' notice. Why should they buy and pay for 5,000 tons of the coal on June 23d if they already had the right to mine it? Or agree to mine it in 30 days if they had the right to mine it on their own time? Or consent that the agreement of June 23d should "not in any way [affect] the notice heretofore given to terminate said leasehold estate further than the right to remove the said 5,000 tons of said coal," if the notice was not accepted absolutely? Moreover, the evidence is that they entered, pursuant to that agreement, conducted mining operations, failed to keep their agreement to withdraw, and mined in excess of the tonnage purchased.

One of the purposes of estoppel is to prevent a party from asserting to another's disadvantage a right inconsistent with a position previously taken by him. It would violate that equitable rule now to permit the defendants to assert that they may disregard the cancellation notice and enjoy a right to continue the mining under the cancelled mine lease, after having made the purchase of the 5,000 tons with the right to mine it subject to the conditions already quoted: Bispham, Equity (9th

ed.), section 282; Miranville v. Silverthorn, 48 Pa. 147, 149; Helser v. McGrath, 52 Pa. 531, 534; Old Colony Trust Co. v. Transit Co., 192 Pa. 596, 617, 44 A. 319; Phila. v. Sheehan, 263 Pa. 449, 457, 107 A. 14. The other defendant, Sterling Fuel Company, is in no better position than Mapel-Sterling Coal Company and is likewise estopped: Thayer v. United Brethren, 20 Pa. 60; Natural Gas Co. v. Phila. Co., 158 Pa. 317, 27 A. 951; Hamilton v. Pittock, 158 Pa. 457, 27 A. 1079.

The briefs suggest other questions not now requiring consideration. It is sufficient to say that it very clearly appears that wrongs in process of perpetration and others threatened, apparently to the irreparable damage to plaintiffs, should be restrained, as was done by the order of the Chief Justice making the appeal a supersedeas.

The order appealed from is reversed; the record is remitted with instructions to reinstate the preliminary injunction, and to continue it until final hearing, or other order of the court not inconsistent with this opinion; costs of this appeal to abide the result.