Gary J. SHAMIS and Patricia Shamis, H/W, Appellants

v.

James MOON c/o Geppert Brothers, Inc., and Geppert Brothers, Inc. and Tishman Construction and Mack K. Trucks, Inc., Appellees.

Superior Court of Pennsylvania.

Argued April 3, 2013.

Filed Dec. 4, 2013.

Reargument Denied Feb. 18, 2014.

---

Robert H. Nemeroff, Jenkintown, for appellant.

Audrey J. Copeland, King of Prussia and David F. White, King of Prussia, for Geppert and Moon, appellees.

BEFORE: PANELLA, OLSON and STRASSBURGER,* JJ.

OPINION BY OLSON, J.:

Appellants, Gary J. Shamis and Patricia Shamis, appeal from the order entered on September 19, 2012, granting summary judgment to Geppert Brothers, ("Geppert Brothers") and dismissing Appellants' claims against both Geppert Brothers and James Moon c/o Geppert Brothers. The September 19, 2012 order finalized the trial court's prior, September 6, 2012 orders, wherein the trial court granted summary judgment to Tishman Construction and Mack K. Trucks, Inc.[1] We vacate and remand.

On February 25, 2010, Appellants filed a complaint against the named Appellees, sounding in negligence. As Appellants

* Retired Senior Judge assigned to the Superior Court.

1. Within this opinion, we will rarely refer to either Tishman Construction or Mack K. Trucks, Inc. We do this because, on appeal, Appellants do not claim that the trial court erred in granting summary judgment to either Tishman Construction or Mack K. Trucks, Inc. Further, we note that Appellants did not oppose the summary judgment motions that were filed by Tishman Construction and Mack K. Trucks, Inc.

averred, on March 4, 2008, Mr. Shamis was employed by M.L. Jones Construction, Inc. (hereinafter "M.L. Jones") and was working, as a laborer, at the site of the Pennsylvania Convention Center expansion in Philadelphia (hereinafter "the Project"). Appellants' Complaint, 2/25/10, at ¶¶ 8 and 10. At the time, the Project was in its demolition phase—M.L. Jones was the demolition subcontractor on the Project and Geppert Brothers was the demolition contractor on the Project. *Id*, at ¶¶ 8–10. According to Appellants, while Mr. Shamis was working on March 4, 2008, Mr. Shamis was run over by a dump truck that was being operated by Geppert Brothers' employee James Moon. *Id*, at ¶ 13–14. The accident caused Mr. Shamis severe and permanent injuries. *Id*, at ¶¶ 18–23.

As is relevant to the case at bar, Appellants claimed that Mr. Moon and Geppert Brothers were negligent in causing Mr. Shamis' injuries.[2,3] Mr. Moon and Geppert

Brothers answered the complaint, denied liability, and discovery commenced.

At the close of discovery, Geppert Brothers filed a motion for summary judgment and claimed that—in accordance with the exclusivity provisions of the Workers' Compensation Act[4]—it was immune from civil liability, as it was Mr. Shamis' "borrowing employer" and Mr. Shamis was its "borrowed employee."[5] Geppert Brothers' Motion for Summary Judgment, 7/2/12, at 1–2. Stated another way, Geppert Brothers claimed that it was immune from civil liability because M.L. Jones had loaned Mr. Shamis to Geppert Brothers and Mr. Shamis "passed under [Geppert Brothers'] right of control with regard not only to the work to be done but also to the manner of performing it." *Mature v. Angelo*, 373 Pa. 593, 97 A.2d 59, 61 (1953) (emphasis omitted).

In support of its summary judgment motion, Geppert Brothers essentially relied exclusively upon the oral deposition testimony of its own fact witnesses.[6]

---

**2.** Mrs. Shamis' claim was for loss of consortium.

**3.** Appellants also claimed that Tishman Construction and Mack K. Trucks, Inc. were negligent in causing Mr. Shamis' injuries.

**4.** 77 P.S. §§ 1–1041.4, 2501–2708.

**5.** Within Geppert Brothers' answer and new matter, Geppert Brothers did not specifically assert that it was immune from liability pursuant to the exclusivity provisions of the Workers' Compensation Act. Nevertheless, as our Supreme Court has held:

[T]he Workmen's Compensation Act deprives the common pleas courts of jurisdiction of common law actions in tort for negligence against employers and is not an affirmative defense which may be waived if not timely pled. The lack of jurisdiction of the subject matter may be raised at any time and may be raised by the court *sua sponte* if necessary.

*LeFlar v. Gulf Creek Indus. Park Number 2*, 511 Pa. 574, 515 A.2d 875, 879 (1986); *see* 77

P.S. § 481(a) ("[t]he liability of an employer under [the Workers' Compensation A]ct shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108").

**6.** Indeed, to support its motion for summary judgment—and its claim that Mr. Shamis was its "borrowed employee"—Geppert Brothers cited to no relevant documentary evidence and to only two purported admissions by Mr. Shamis. As phrased by Geppert Brothers, these two admissions were: 1) that, on the day of the accident, Mr. Shamis was "asked who he worked for[ and he] responded 'Geppert Brothers Demolition' " and 2) that Mr. Shamis "admitted that he was working for Geppert [Brothers] and was then assigned to [M.L.] Jones for the convention site project." Geppert Brothers' Motion for Summary Judgment, 7/2/12, at 3.

First, Geppert Brothers cited to the oral deposition testimony of Gary Patrick to "establish" that: Mr. Patrick was employed by Geppert Brothers; Mr. Patrick was the foreman on the Project; M.L. Jones did not have a foreman on the Project; the owner of M.L. Jones "was not on the project often and that no one else from her company was on the [Project] site with any regularity;" "Geppert [Brothers'] laborers were swapped over to M.L. Jones for [the] job and the decisions were made by Geppert [Brothers];" "when the [Project] was finished, all of the laborers and operators furnished to M.L. Jones returned to work for Geppert [Brothers];" if Mr. Shamis had a question about his job, Mr. Patrick would direct Mr. Shamis; and, Geppert Brothers "directed what safety clothing [Mr. Shamis was required to] wear" and controlled the hours that Mr. Shamis was required to work. Geppert Brothers' Motion for Summary Judgment, 7/2/12, at 4–7, *citing* Deposition of Gary Patrick, 4/19/12, at 21 and 23–28.

Geppert Brothers also attempted to support its summary judgment motion with the oral deposition testimony of M.L. Jones' employees Francis Bostwick and William Hawthorne. Geppert Brothers claimed that, during their respective depositions, Messrs. Bostwick and Hawthorne "confirmed" that M.L. Jones employees "reported to Gary Patrick of Geppert [Brothers] for their work assignments" and that, "[l]ike all other [M.L.] Jones employees, when the [Project] was finished, [Messrs. Bostwick and Hawthorne] returned to work for Geppert [Brothers]." Geppert Brothers' Motion for Summary Judgment, 7/2/12, at 4, *citing* Deposition of Francis Bostwick, 4/19/12, at 18–19 and Deposition of William R. Hawthorne, 5/31/12, at 15–16; *but see* Deposition of Francis Bostwick, 4/19/12, at 17–19 (Mr. Bostwick only testified that **he** reported to Gary Patrick and that, when the Project ended, **he** returned to work at Geppert Brothers); Deposition of William R. Hawthorne, 5/31/12, at 12–26 (same).

■ Obviously, pursuant to *Nanty–Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932), the "[t]estimonial affidavits [or depositions] of the moving party or [its] witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the factfinder." *Penn Ctr. House, Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900, 903 (1989) (internal quotations, citations, and corrections omitted). Yet, in their response to Geppert Brothers' motion for summary judgment, Appellants did not identify any potential *Nanty–Glo* issue and, thus, did not call the potential issue to the trial court's attention.

Instead, Appellants responded to Geppert Brothers' summary judgment motion

With respect to the first purported admission, during Mr. Shamis' deposition, Mr. Shamis testified that—when he stated that he worked for Geppert Brothers on the day of the accident—he was on morphine, he was "foggy from the medication," and he answered the question incorrectly. Deposition of Mr. Shamis, 2/2/12, at 170–171. Further, during his deposition, Mr. Shamis repeatedly testified that, on the day of the accident, he was working for M.L. Jones. With respect to the second purported "admission," Geppert Brothers has erroneously paraphrased Mr. Shamis' deposition testimony, as Mr. Shamis never testified that he was merely "assigned to [M.L.] Jones for the convention site project." Geppert Brothers' Motion for Summary Judgment, 7/2/12, at 3. Indeed, within the cited portions of Mr. Shamis' deposition testimony, Mr. Shamis testified that he was employed by Geppert Brothers from November 2005 until October 2007 and that he "started with [M.L.] Jones in October 2007." Deposition of Mr. Shamis, 2/2/12, at 12–13. We note that Mr. Shamis specifically (and repeatedly) testified that he was employed by M.L. Jones on the day of the accident. *Id.* at 11.

by: 1) "denying" the truth of almost all oral statements that were given by Messrs. Patrick, Bostwick, and Hawthorne and 2) attaching evidence that, Appellants claimed, demonstrated that Mr. Shamis was not a borrowed employee of Geppert Brothers.

With respect to the attached evidence, Appellants first attached documents that were filed with the Commonwealth's Bureau of Workers' Compensation and that pertained to Mr. Shamis' Workers' Compensation Act claim. These documents stated that, on the day of the accident: M.L. Jones was Mr. Shamis' employer; M.L. Jones paid Mr. Shamis' wages; Mr. Shamis worked full-time for M.L. Jones; and, Mr. Shamis was not "employed by any employer other than" M.L. Jones. *See* Mr. Shamis' Workers' Compensation Act Claim, attached at Exhibit "I" to Appellants' Response. Moreover, the workers' compensation documents declared that M.L. Jones hired Mr. Shamis on September 10, 2007, that Mr. Shamis' workers' compensation claim triggered M.L. Jones' workers' compensation insurance policy, and that Mr. Shamis was being paid workers' compensation benefits pursuant to M.L. Jones' insurance policy. *Id.*

Further, attached to Appellants' response was the subcontract between Geppert Brothers and M.L. Jones. According to Appellants, the subcontract specifically declared that M.L. Jones had both the right and the obligation to supervise the demolition on the Project. In relevant part, the subcontract declares:

CONSTRUCTION CONTRACT BETWEEN GEPPERT BROS., INC. AND M.L. JONES CONSTRUCTION, CO. FOR DEMOLITION AND SITE CLEARING FOR THE PENNSYLVANIA CONVENTION CENTER EXPANSION PROJECT

DEMOLITION CONTRACT NO. 1

THIS CONSTRUCTION AGREEMENT MADE THIS 18TH DAY OF JULY IN THE YEAR TWO THOUSAND AND SEVEN

BETWEEN THE CONTRACTOR GEPPERT BROS., INC.

. . .

AND THE SUBCONTRACTOR [M.L. JONES]

. . .

ARTICLE 1 THE WORK

1.1 The Subcontractor shall furnish all supervision and labor, supply and install all materials, tools, equipment, scaffolding, hoisting, transportation, unloading, handling, and all safety requirements and safety inspections necessary to perform and complete all work required for demolition, environmental remediation and site clearing for the [Project] . . .

1.1.1 . . . The Subcontractor shall cause the responsible parties to use reasonable efforts to permit a minimum amount of noise and construction hazards that would cause discomfort or danger to occupants of adjoining properties and pedestrians and others in the area surrounding the site. Nothing contained in this agreement shall be deemed to give any third party any claim or right of action against Geppert [Brothers] . . . that does not otherwise exist without regard to this agreement, except for any rights granted to Geppert [Brothers] that are expressly set forth in this agreement. The Subcontractor shall be responsible for injury or damage caused to all persons or property. The Subcontractor shall comply with and cause the responsible parties to comply with the requirements of companies providing property insurance with respect to the site.

. . .

## ARTICLE 4 THE CONTRACT DOCU-MENTS

. . .

4.2   The Subcontractor agrees to perform the work under the general direction of Geppert [Brothers] and subject to the final approval of Geppert [Brothers], the Architect/Engineer or other specified representative of the Owner, in accordance with the contract documents.

. . .

## ARTICLE 9 SUBCONTRACTOR RESPONSIBILITIES

. . .

9.14   The Subcontractor agrees to employ competent administrative, supervisory and field personnel to accomplish the work, including layout and engineering and preparation and checking of shop drawings . . .

. . .

## ARTICLE 11 MISCELLANEOUS

. . .

11.2   It is understood and agreed that the Subcontractor is a third party contractor and is not a servant, agent or employee of Geppert [Brothers] . . .

Construction Contract Between Geppert Brothers and M.L. Jones, 7/18/07, at 1–9 (bolding and some internal capitalization omitted).

■   As Appellants noted, in *Mature v. Angelo*, 373 Pa. 593, 97 A.2d 59 (1953), our Supreme Court held that, under the borrowed servant doctrine:

The crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is whether he passes under the latter's right of control with regard **not only to the work to be done but also to the manner of performing it.**

A servant is the employe of the person who has the **right** of controlling the manner of his performance of the work, irrespective of whether he **exercises** that control or not.

*Mature*, 97 A.2d at 60 (emphasis in original) (internal citations omitted); *see also Wilkinson v. K–Mart*, 412 Pa.Super. 434, 603 A.2d 659 (1992) (same); Appellants' Memorandum in Support of its Response, 8/1/12, at 8.

In following, Appellants claimed that—since the subcontract provided M.L. Jones with the right to supervise the Project—there was a factual issue as to whether M.L. Jones also possessed the right to control Mr. Shamis' work. Appellants' Response, 8/1/12, at ¶¶ 27–29.

Finally, Appellants cited to deposition testimony, which, Appellants claimed, demonstrated that Mr. Shamis "was an experienced laborer who had worked on many demolition projects prior to his work at the Project. [Mr. Shamis] was, for this reason and for the most part, left to his own devices and experience in performing. his work on the Project on a daily basis." Appellants' Memorandum in Support of Response, 8/1/12, at 10. In support of this declaration, Appellants cited to the deposition testimony of Gary Patrick, wherein Mr. Patrick specifically testified that Mr. Shamis did not need to have "somebody . . . direct him every day." *See* Deposition of Gary Patrick, 4/19/12, at 26.

As such, and even though Appellants admitted that Mr. Shamis' actual supervisor was from Geppert Brothers, Appellants claimed that the trial court must deny Geppert Brothers' motion for summary judgment. *See* Appellants' Response, 8/1/12, at ¶ 29 ("[i]t is admitted that [Mr.] Shamis' supervisor was from Geppert [Brothers]; **however, [Mr.] Shamis' supervisor did not control the**

manner in which [Mr.] Shamis performed his work") (emphasis added).

On September 6, 2012, the trial court entered an order granting Geppert Brothers' motion for summary judgment and dismissing Appellants' claims against the company.[7] Trial Court Order, 9/6/12, at 1. Upon entry of this order, the only remaining defendant in the case was James Moon—and Mr. Moon had not filed a motion for summary judgment. As Appellants explain, they, Geppert Brothers, and Mr. Moon then approached the trial court and requested the trial court to enter a "substitute" order, wherein the trial court would simply dismiss Appellants' claims against Mr. Moon. Appellants' Brief at 6. The trial court acceded and, on September 19, 2012, the trial court entered an order declaring:

> AND NOW, this 19th day of September, 2012, upon consideration of Geppert Brothers, Inc.'s Motion for Summary Judgment, and any response thereto, it is hereby ORDERED and DECREED that the Motion is GRANTED.
>
> It is further ORDERED and DECREED that [Appellants'] Complaint is dismissed with prejudice against Geppert Brothers, Inc. as well as against James Moon by operation of law.[fn.1]

[fn.1] Under the "Borrowed Servant Doctrine[,"] Geppert Brothers, Inc. became the statutory employer of [Mr. Shamis]. James Moon as an employee of Geppert Brothers, Inc. was a co-worker of [Mr. Shamis]. Under [Pennsylvania] law, [Mr. Shamis] may not maintain a negligence cause of action for damages against a co-worker of his statutory employer. . . .

Plaintiff opposed the Summary Judgment Motion, however, agrees that this Order be substituted for the [trial c]ourt's prior Order dated 9/6/12.

Trial Court Order, 9/19/12, at 1.[8]

Appellants filed a timely notice of appeal and now claim: [9]

> Whether the evidence of record, viewed in the light most favorable to [Appellants], presents a genuine issue of material fact as to whether [Mr. Shamis'] employer, M.L. Jones Construction, Co., retained the right of control over [Mr. Shamis'] work and the manner in which he [performed] his work on the date of the accident, so as to preclude application of the Borrowed Servant Doctrine to [Geppert Brothers]?

Appellants' Brief at 4.

This Court has stated:

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.
>
> Summary judgment is appropriate only when the record clearly shows that

7. Also on September 6, 2012, the trial court granted the unopposed summary judgment motions that were filed by Tishman Construction, Mack K. Trucks, Inc., and the additional defendants that were joined during the course of this litigation.

8. On appeal, no party has claimed that the trial court erred in dismissing the claims against Mr. Moon—even though, it appears, the trial court acted upon an unwritten, unfiled, oral request for summary judgment that was made outside of the record. *See Taylor v.*

*Owens–Corning Fiberglas Corp.*, 446 Pa.Super. 174, 666 A.2d 681, 689 (1995) ("an oral request for summary judgment absent a written document is insufficient to meet the requirements of Pa.R.Civ.P. 1035[ ]"); *DiGregorio v. Keystone Health Plan E.*, 840 A.2d 361, 367 (Pa.Super.2003) (*en banc* ) (same).

9. The trial court did not order Appellants to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Englert v. Fazio Mech. Serv's, Inc.*, 932 A.2d 122, 124 (Pa.Super.2007) (citations omitted), *appeal denied*, 595 Pa. 707, 938 A.2d 1053 (2007).

At the outset, and even though no party has raised the issue, we note that Geppert Brothers has never claimed that it was Mr. Shamis' "statutory employer" under the Workers' Compensation Act. *See* 77 P.S. § 52. Rather, Geppert Brothers moved for summary judgment based solely upon the claim that it was "immune from liability pursuant to the **Borrowed Servant Doctrine** of the Pennsylvania Workers' Compensation Act." Geppert Brothers' Motion for Summary Judgment, 7/2/12, at 2 (emphasis added). Yet, since the issue of "statutory employer" immunity potentially implicates the subject matter jurisdiction of this Court, we must briefly discuss the differences between the "statutory employer doctrine" and the "borrowed servant doctrine"—and then discuss why the statutory employer doctrine is inapplicable to this case.

■ "A statutory employer is a master who is not a contractual or [a] common-law one, but is made one by the [Workers' Compensation] Act." *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424, 425 (1930). As our Commonwealth Court has explained, "[t]he statutory employer defense is a legal fiction, based entirely upon a statute passed in the early part of [the twentieth] century, created to assist the Pennsylvania worker by assuring coverage for that worker under the Workers' Compensation Act." *Peck v. Del. Cty. Bd. of Prison Inspectors*, 765 A.2d 1190, 1192 (Pa.Cmwlth.2001). Specifically, statutory employer immunity arises from section 203 of the Workers' Compensation Act, which declares:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable [under the Workers' Compensation Act] to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52.

In *McDonald*, our Supreme Court summarized the above statute and then discerned the "five elements [that] are essential to the creation of a 'statutory employer' relationship so that the statutory employer would be immune from a suit for negligence." *Fonner v. Shandon, Inc.*, 555 Pa. 370, 724 A.2d 903, 905 (1999). The *McDonald* Court held:

> To create the relation of statutory employer under section 203 of the [A]ct (77 [P.S.] § 52), all of the following elements essential to a statutory employer's liability must be present: (1) An employer who is under contract with an owner or one in the position of an owner[;] (2) Premises occupied by or under the control of such employer[;] (3) A subcontract made by such employer[;] (4) Part of the employer's regular business [e]ntrusted to such subcontractor[; and,] (5) An employee of such subcontractor.

*McDonald*, 153 A. at 426.

■ By contrast, the borrowed servant doctrine "is an outgrowth of the common

law rule that a servant who is **loaned** by his master to a third party is regarded as the servant of that third party while under that third party's direction and control." *Mathis v. United Eng'rs & Constructors, Inc.*, 381 Pa.Super. 466, 554 A.2d 96, 102 (1989) (emphasis added). The "borrowing employer" is thus the common-law master of the borrowed employee—and, by definition, the borrowing employer cannot be a "statutory employer." *See McDonald*, 153 A. at 425 ("[a] statutory employer is a master **who is not** a contractual or **[a] common-law one,** but is made one by the [Workers' Compensation] Act") (emphasis added); *see also English v. Lehigh Cty. Auth.*, 286 Pa.Super. 312, 428 A.2d 1343, 1347 (1981) (recognizing the distinction between the "statutory employer doctrine" and the "borrowed servant doctrine"); *Ashman v. Sharon Steel Corp.*, 302 Pa.Super. 305, 448 A.2d 1054 (1982) (same).

While we will describe the borrowed servant doctrine in more detail below, it may suffice to say that—since Geppert Brothers based its summary judgment motion exclusively upon the borrowed servant doctrine—Geppert Brothers simply did not move for summary judgment upon any potential statutory employer immunity. Certainly, throughout these proceedings, Geppert Brothers has not once referenced *McDonald* or cited to the "five elements [that] are essential to the creation of a 'statutory employer' relationship so that the statutory employer would be immune from a suit for negligence." *Fonner*, 724 A.2d at 905.

■ We note that we have the ability to affirm a decision on any grounds that are supported by the record. *Cassel–Hess v. Hoffer*, 44 A.3d 80, 85 (Pa.Super.2012) (internal quotations and citations omitted). However, since a trial court cannot "raise an argument in favor of summary judgment *sua sponte* and grant summary judg-

ment thereon," it would appear as if this Court—also—cannot affirm a trial court's grant of summary judgment upon an argument that was never raised in support of the summary judgment motion. *See Yount v. Pa. Dep't of Corr.*, 600 Pa. 418, 966 A.2d 1115, 1119 (2009) ("[f]or a trial court to raise an argument in favor of summary judgment *sua sponte* and grant summary judgment thereon risks depriving the court the benefit of advocacy on the issue, and depriving the parties of the opportunity to be heard"). We could not do so, as this would cause us to affirm on grounds that are **not** "supported by the record." *Cassel–Hess*, 44 A.3d at 85.

The current issue is complicated by the fact that "the Workmen's Compensation Act deprives the common pleas courts of jurisdiction of common law actions in tort for negligence against employers." *LeFlar*, 515 A.2d at 879. Thus, it could be argued that—even on appeal—this Court has the obligation to *sua sponte* raise the statutory employer defense, craft an argument in favor of or against its applicability, and resolve the issue—all without briefing or argument by the parties and all without a focused, structured presentation before the trial court. Yet, in the case at bar, we need not determine whether the jurisdictional nature of Workers' Compensation Act immunity requires this Court to *sua sponte* raise the statutory employer defense, as the record is undeveloped in this regard. Certainly, the record does not contain the contract between the owner and Geppert Brothers. Therefore, there is no proof that Geppert Brothers was "under contract with an owner or one in the position of an owner." *McDonald*, 153 A. at 426. Further, since we cannot examine the underlying contract between the owner and Geppert Brothers, we cannot determine the fourth *McDonald* element: whether, at the time Mr. Shamis was hurt,

he was engaging in work that was "[p]art of [Geppert Brothers'] regular business [e]ntrusted to [M.L. Jones]." *McDonald,* 153 A. at 426; *see also Stipanovich v. Westinghouse Elec. Corp.,* 210 Pa.Super. 98, 231 A.2d 894, (1967) (holding that, to prove the "regular business" element of the *McDonald* test, the general contractor must demonstrate that it was "obliged by contract [with the owner] to perform the activity in which [the subcontractor] was engaged at the time of the accident").

As such, on appeal, we will only consider whether the trial court erred in concluding that Geppert Brothers was "immune from liability pursuant to the Borrowed Servant Doctrine of the Pennsylvania Workers' Compensation Act." Geppert Brothers' Motion for Summary Judgment, 7/2/12, at 2.

■ As the trial court reasoned, there was no genuine issue of material fact that, on the day of the accident, Mr. Shamis was the "borrowed employee" of Geppert Brothers. Trial Court Opinion, 10/23/12, at 9. Specifically—and citing to the oral deposition testimony of fact witnesses Gary Patrick, Francis Bostwick, and William Hawthorne [10]—the trial court concluded that "there was no dispute of material fact [that] Geppert [Brothers] had the power to control [Mr.] Shamis' work and exercised that power" because Geppert Brothers: was Mr. Shamis' supervisor; "controlled the work to be done at the job site;" established the work schedules;

specified the "clothing to be worn on the job site;" and, had a "weekly safety meeting on the site." *Id.* at 9–10. Moreover, the trial court noted that, at the time of the accident, Mr. Shamis was in the area because Geppert Brothers' foreman, Gary Patrick, asked him to clean the area. *Id.* at 11.

We conclude that the trial court erred in granting summary judgment. In the case at bar, the facts reveal a genuine issue of material fact as to whether the "right of controlling the manner of [Mr. Shamis'] performance of the work" ever passed to Geppert Brothers.

It bears repeating that:

The crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is whether he passes under the latter's right of control with regard **not only to the work to be done but also to the manner of performing it.**

A servant is the employe of the person who has the **right** of controlling the manner of his performance of the work, irrespective of whether he **exercises** that control or not.

*Mature,* 97 A.2d at 60 (emphasis in original) (internal citations omitted)

Moreover, our Supreme Court has identified "additional factors" "which may be relevant ... [in] determining whether a servant furnished by one person to another becomes the employe of the person to

**10.** As noted above, a potential *Nanty–Glo* issue existed in this case—and the argument could have been made that, in relying exclusively upon the oral deposition testimony of Messrs. Patrick, Bostwick, and Hawthorne—Geppert Brothers failed to properly support its motion for summary judgment. However, within their response to the summary judgment motion, Appellants did not raise the potential *Nanty–Glo* issue. Thus, Appellants have waived any such claim. *Devine v. Hutt,*

863 A.2d 1160, 1169 (Pa.Super.2004) ("arguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal"); *Lineberger v. Wyeth,* 894 A.2d 141, 149 (Pa.Super.2006) (failure to raise *Nanty–Glo* issue in response to summary judgment motion waives the issue). Further, on appeal, Appellants have not claimed that the trial court's summary judgment ruling was based upon erroneous evidence.

whom he is loaned." *Id.* These additional factors include: "the right to select and discharge the employee," the "skill or expertise required for the performance of the work," the payment of the employee's wages, and the duration of employment. *JFC Temps, Inc. v. W.C.A.B. (Lindsay),* 545 Pa.149, 680 A.2d 862, 864 (1996); *Mature,* 97 A.2d at 61. Further, our Supreme Court has emphasized:

> The mere fact that the [entity] to whom a[n employee is] supplied points out to the [employee] from time to time the work to be done and the place where it is to be performed does not in any way militate against the continuance of the relation of [employee] and employer between the [employee] and his original master.

*Mature,* 97 A.2d at 61.

In this case, while there is evidence that Geppert Brothers controlled the Project, there is also significant, competing evidence that Mr. Shamis never "passe[d] under [Geppert Brothers'] right of control with regard [ ] to the work to be done [and] the manner of performing it." *Id.* (emphasis omitted).

Initially, we consider the "additional factors" that, our Supreme Court has held, are relevant in determining "whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned." *Id.* Viewing the record in the light most favorable to Appellants (as we must), it is apparent that each of these "additional factors" favor Appellants.

As stated above, the documents pertaining to Mr. Shamis' Workers' Compensation Act claim declared that, on the day of the accident: M.L. Jones was Mr. Shamis' employer; M.L. Jones paid Mr. Shamis' wages; Mr. Shamis worked full-time for M.L. Jones; and, Mr. Shamis was not "employed by any employer other than" M.L. Jones. *See* Mr. Shamis' Workers' Compensation Act Claim, attached at Exhibit "I" to Appellants' Response. Therefore, the documents demonstrate that M.L. Jones paid Mr. Shamis' wages, possessed "the right to select and discharge the employee," and employed Mr. Shamis for an indefinite period of time.[11] *Mature,* 97 A.2d at 61.

Moreover, with respect to the final "additional factor," there is evidence that Mr. Shamis was a highly skilled employee who needed little direction on the job. *See* Deposition of Gary Patrick, 4/19/12, at 26.

Therefore, each of the relevant "additional factors" favor Appellants. We must now consider whether a genuine issue of material fact exists as to whether Mr. Shamis "passe[d] under [Geppert Brothers'] right of control with regard not only to the work to be done but also to the manner of performing it." *Mature,* 97 A.2d at 61 (emphasis omitted). We conclude that there exists a genuine issue of material fact on this issue.

The subcontract between Geppert Brothers and M.L. Jones declared that M.L. Jones was required to:

> **furnish all supervision and labor,** supply and install all materials, tools, equipment, scaffolding, hoisting, transportation, unloading, handling, and all safety requirements and safety inspections **necessary to perform and complete all work** required for demolition, environmental remediation and site clearing for the [Project] . . .

11. While there is evidence that M.L. Jones' employees Francis Bostwick and William Hawthorne returned to Geppert Brothers after the Project was completed, there is no evidence that Mr. Shamis' employment was so limited in duration.

Construction Contract Between Geppert Brothers and M.L. Jones, 7/18/07, at 1 (internal capitalization omitted) (emphasis added).

Further, the subcontract declared that M.L. Jones had merely agreed "to perform the work **under the general direction** of Geppert [Brothers] and subject to the final approval of Geppert [Brothers]." *Id.* at 3.

Viewing these specific contractual provisions in a light most favorable to Appellants, it appears as if M.L. Jones was explicitly tasked with supervising the Project—and that it was simply working under the "general direction of" Geppert Brothers. As such, there is evidence that M.L. Jones **never even "loaned"** Mr. **Shamis to Geppert Brothers**—and that neither M.L. Jones nor Mr. Shamis intended for Mr. Shamis to "pass[ ] under [Geppert Brothers'] right of control with regard not only to the work to be done but also to the manner of performing it." *Mature,* 97 A.2d at 61 (emphasis omitted); *see also Quick v. Allegheny Constr. Equip. Co.,* 361 Pa. 377, 65 A.2d 238, 239 (1949) ("a workman cannot be loaned to become the employee of another without the workman's consent").

Instead, the contractual provisions support the conclusion that M.L. Jones retained the right to control the fine aspects of the work—such as the manner in which Mr. Shamis performed his work—and that

Geppert Brothers was only entitled to "generally" oversee the work of M.L. Jones. Since "[a] servant is the employe of the person who has the **right** of controlling the manner of his performance of the work, irrespective of whether he **exercises** that control or not," there is a genuine issue of material fact as to whether Mr. Shamis ever "passe[d] under [Geppert Brothers'] right of control with regard not only to the work to be done but also to the manner of performing it." *Mature,* 97 A.2d at 61 (some emphasis omitted). The trial court erred in concluding otherwise.[12]

Order vacated. Case remanded. Jurisdiction relinquished. Judgment Entered.

## CONCURRING OPINION BY STRASSBURGER, J.:

I agree with the Majority's analysis of the merits of the issues before this Court. I write separately to opine that Geppert Brothers should be estopped to raise the borrowed servant doctrine based upon its abuse of the process of Minority Business Enterprise (MBE) participation in the contract.

It is the policy of this Commonwealth "to increase the utilization of minority and women-owned businesses and other disadvantaged businesses in all competitive contracting opportunities." 4 Pa.Code § 1.453. Various governments within the

---

12. In support of its grant of summary judgment, the trial court declared that Mr. Shamis "admitted" that Gary Patrick was his supervisor and that, at the time of the accident, Mr. Shamis was in the specific area because Mr. Patrick asked him to clean the area. We note that, although Mr. Shamis admitted Mr. Patrick was his supervisor, Mr. Shamis specifically denied that Mr. Patrick "control[ed] the manner in which [Mr.] Shamis performed his work." *See* Appellants' Response, 8/1/12, at ¶ 29 ("[i]t is admitted that [Mr.] Shamis' supervisor was from Geppert [Brothers]; however, [Mr.] Shamis' supervisor did not **control the manner in which [Mr.] Shamis performed his work**") (emphasis added). Further, even though Mr. Shamis might have acceded to Mr. Patrick's request to clean a specific area, our Supreme Court has held:

> The mere fact that the [entity] to whom a[n employee is] supplied points out to the [employee] from time to time the work to be done and the place where it is to be performed does not in any way militate against the continuance of the relation of [employee] and employer between the [employee] and his original master.

*Mature,* 97 A.2d at 61.

Commonwealth have sought to achieve this goal by establishing "procurement polic[ies] that will give consideration, when possible and cost effective, to contractors offering to utilize minority and women-owned businesses and disadvantaged businesses in the selection and award of contracts." *Id*, at § 1.453(1).

The evidence of record indicates that Geppert Brothers subcontracted with M.L. Jones, a minority-owned company, in order to comply with city MBE participation requirements on the Convention Center job. *See* Deposition of Gary Patrick, 4/19/2010, at 20 ("It's all part of city requirements, participation, minority participation on city jobs."). Geppert Brothers then arranged for its own employees to be transferred to M.L. Jones to perform the contracted work. *See* Deposition of William Hawthorne, 5/31/2012, at 15–16 ("I think at one point I was paid by Geppert in the very beginning … I do remember there being a swap out for the minority aspect of the job."); *see also id*, at 12–13 ("I believe—I think we were—I recall we were paid under ML Jones as minority outfit.... I don't know if all the employees were under her for the minority aspect of the job or just some of us, but I was—my paycheck was from ML Jones"). Indeed, Geppert Brothers' foreman indicated that Plaintiff Shamis had worked regularly for Geppert Brothers for years "depend[ing] on the minority participation jobs...." Deposition of Gary Patrick, 4/19/2010, at 21.

Geppert Brothers secured its contract upon the representation that M.L. Jones would be participating in this construction project as an independent business owned by an African–American woman. Geppert Brothers should be bound by its representation. Accordingly, I would hold that Geppert Brothers is estopped to deny that Shamis was an M.L. Jones employee at the time he was injured. *See, e.g., Titus v.*

*Mapel–Sterling Coal Co.*, 311 Pa. 529, 167 A. 229, 230 (1933) ("One of the purposes of estoppel is to prevent a party from asserting to another's disadvantage a right inconsistent with a position previously taken by him.").